```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

THE OFFICIAL COMMITTEE OF UNSECURED        **No. 6:15-cv-06484-MAT**
CREDITORS OF CORNERSTONE HOMES,
INC., and MICHAEL H. ARNOLD,               **DECISION AND ORDER**
CHAPTER 11 TRUSTEE OF CORNERSTONE
HOMES, INC.,

               Plaintiffs,

  -vs-

DAVID L. FLEET, TRACY L. FLEET, CNY
HOMES HOLDINGS, LLC, OUR FAMILY
GETAWAY, LLC, BUCK HOLLOW
OUTFITTERS & TREE FARM, LLC, and
FIRST CITIZENS NATIONAL BANK,

               Defendants.
_____

In re:                                     **Bankruptcy No. 2:13-21103-PRW**

CORNERSTONE HOMES, INC.,                   **Adversary No. 2:15-02022-PRW**

               Debtor.
_____

## I. Introduction

Defendants David L. Fleet ("Fleet"), Tracy L. Fleet ("T. Fleet"), CNY Homes Holdings, LLC ("CNY"), and Buck Hollow Outfitters & Tree Farm, LLC ("Buck Hollow") (collectively, "the Fleet Defendants") move to withdraw the reference to the Bankruptcy Court for the Western District of New York in this action brought by the Official Committee of Unsecured Creditors of Cornerstone Homes, Inc. ("the Committee"), and Michael H. Arnold, Chapter 11 Trustee of Cornerstone Homes, Inc. ("the Trustee") (collectively,

"Plaintiffs"). For the following reasons, the Court denies the Fleet Defendants' motion to withdraw the reference, without prejudice with leave to renew.

**II. Procedural History**

On July 15, 2013, Cornerstone Homes, Inc. ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On November 22, 2013, the Committee moved for the appointment of a Chapter 11 trustee. The Bankruptcy Court (Warren, J.) held a two-day hearing on this motion in January 2014. After Debtor withdrew its opposition, the Bankruptcy Court entered an order appointing the Trustee, who, since his appointment, has been in control of Debtor's assets and has continued to operate and manage Debtor's business in accordance with Section 1108 of the Bankruptcy Code.

In December 2014, the Securities and Exchange Commission ("the SEC") instituted an action in this District against Fleet, <u>Securities and Exchange Comm'n v. Fleet</u>, 6:14-cv-06695-MAT-MWP (W.D.N.Y. Dec. 12, 2014). The SEC alleges that Fleet violated Federal securities law by fraudulently selling approximately $16.75 million in unregistered and uncertified notes of his wholly-owned company to more than 300 investors between 1997 and March 2010.

On March 31, 2015, the Committee filed a Motion to Prosecute, seeking an order authorizing the Committee to prosecute and, if appropriate, settle certain claims on behalf of Debtor's estate

pursuant to 11 U.S.C. §§ 105(a), 1103(c), and 1109(b). The Bankruptcy Court granted the application on July 9, 2015. On July 14, 2015, the Committee and the Trustee jointly commenced an Adversary Proceeding in Bankruptcy Court. In the complaint, Plaintiffs assert seventeen causes of action.  Counts I through VIII seek avoidance and recovery of allegedly fraudulent transfers of money and property, pursuant to Sections 502(d), 544, 550, and 551 of the Bankruptcy Code and Sections 276 and 276-a and 273, 274, and 275 of the New York Debtor and Creditor Law ("NYDCL"); Count XII is asserted against Fleet for breach of fiduciary duty to Debtor; Count XIII asserts a claim of unjust enrichment against the Fleet Defendants; Count XIV seeks to pierce the corporate veil and hold Fleet liable for Debtor's unsecured obligations; Count XV asserts that Fleet's claims should be equitably subordinated; Count XVI is asserted  against Fleet for avoidance and recovery of certain monies pursuant to Sections 502(d), 547, 550, and 551 of the Bankruptcy Code; and Count XVII seeks an accounting of the Fleet Defendants' transactions with Debtor.

On July 9, 2015, Plaintiffs and The Community Preservation Corporation, Elmira Savings Bank, First Citizens, First Niagara Funding, Inc., and Lyons National Bank (collectively, "the Prepetition Lenders") filed stipulations and proposed orders with the Bankruptcy Court agreeing to toll all statute of limitations periods for claims arising under non-bankruptcy law and Chapter 5

of the Bankruptcy Code until August 14, 2015. The limitations periods were further extended to October 16, 2015.

On August 31, 2015, the Trustee commenced an adversary proceeding against several of the Prepetition Lenders seeking declaratory judgments that certain consolidated mortgages issued by Debtor to them are unenforceable and that the notes on which they are based are unsecured. This adversary proceeding remains pending in the Bankruptcy Court.

On August 14, 2015, the Fleet Defendants filed the instant motion (Dkt #1) requesting that the Court exercise its discretion to permissively withdraw the automatic reference of the Adversary Proceeding to the Bankruptcy Court "for cause." Plaintiffs filed a Response on September 9, 2015 (Dkt #5), to which the Fleet Defendants filed a Reply on October 2, 2015 (Dkt #7). The motion was submitted without oral argument on October 16, 2015.

### III. Applicable Legal Principles

#### A. Jurisdiction

District courts have original jurisdiction over civil proceedings "arising under" or "related to" bankruptcy cases brought pursuant to Title 11 of the United States Code, 28 U.S.C. § 1334. District courts are permitted to refer "any or all" cases under Title 11, proceedings arising under Title 11, and cases arising in or related to a case under Title 11 "to the bankruptcy judges for the district." 28 U.S.C. § 157(a). In this District, by

standing order dated February 29, 2012, "any and all cases under title 11 and any and all proceedings arising under title 11 or arising in or related to a case under title 11" are referred to the Bankruptcy Court for adjudication.

**B.   Permissive Withdrawal of the Reference**

A "district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Section 157(d) does not define "cause."

In In re Orion Pictures Corp., 4 F.3d 1095 (2d Cir. 1993) ("Orion"), the Second Circuit held that whether "cause" has been shown depends on a variety of factors, including "whether the claim or proceeding is core or non-core . . . considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." 4 F.3d at 1101 (citations omitted). In the past, the nature of the claim as core or non-core[1] was the most important factor. See id. ("A district court considering whether to withdraw the reference should first evaluate

---

[1] Section 157 of the 1984 Act "classifies matters as either 'core proceedings,' which the bankruptcy court may 'hear and determine' and on which the court 'may enter appropriate orders and judgments,' [28 U.S.C.] § 157(b)(1), or 'non-core proceedings,' which the bankruptcy court may hear, but for which the bankruptcy court is only empowered to submit proposed findings of fact and conclusions of law to the district court for de novo review, § 157(c)(1)." Orion, 4 F.3d at 1100-01. The 1984 Act does not define "core proceedings" but sets forth a non-exhaustive list of examples, including "counterclaims by the estate against persons filing claims against the estate," and "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2).

whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn."). However, the importance of the core versus non-core distinction was called into question by the United States Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594 (2011) ("Stern"). See, e.g., In re Lyondell Chem. Co., 467 B.R. 712, 719 (S.D.N.Y. 2012) ("Lyondell") (collecting and comparing cases). In Stern, the issue before the Supreme Court was whether, absent explicit consent by the parties, a bankruptcy court constitutionally may render a final judgment regarding a counterclaim by the bankruptcy estate against a person who filed a claim against the estate. The Supreme Court concluded that although 28 U.S.C. § 157(b)(2)(C) permits the bankruptcy court to enter final judgment on the counterclaim, Article III of the Constitution does not, and to that extent Congress exceeded the bounds of Article III. Stern, 131 S. Ct. at 2608, 2620. Citing its plurality decision in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), recognizing a category of cases involving "public rights" that Congress could constitutionally assign to "legislative" courts for resolution, the Stern court held that Article III precluded the bankruptcy court from finally determining the counterclaim because, inter alia,[2] the counterclaim involved only "private rights." See

---

[2] See Stern, 131 S. Ct. at 2621 (Scalia, J., concurring) ("count[ing] at least seven different reasons given in the [majority]'s opinion for concluding that an Article III judge was required to adjudicate this lawsuit" which "should

Stern, 131 S. Ct. at 2611 ("[The] claim is a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy. [Prior decisions have] . . . rejected the application of the 'public rights' exception in such cases."); 2614-15; see also id. at 2620 ("The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."). The Supreme Court emphasized, however, that the issue presented in Stern was "narrow," and that it would not "meaningfully change[ ] the division of labor" between bankruptcy courts and district courts. Stern, 131 S. Ct. at 2620.

In the wake of Stern, it is unclear to what extent the core versus non-core distinction emphasized in Orion remains relevant to determining whether to withdraw the reference "for cause." The Second Circuit has not yet ruled on the issue, and district courts throughout the Circuit, and even within the same district, are divided. Compare, e.g., In re Extended Stay, Inc., Nos. 11 Civ. 5394, 11 Civ. 5395, 11 Civ. 5396, 11 Civ. 5397, 11 Civ. 5864(JMP), 2011 WL 5532258, at *8 (S.D.N.Y. Nov. 10, 2011) ("[T]he core/non-core distinction is still a relevant consideration in permissive withdrawal analysis, except to the extent Stern holds that Congress's classification of a claim as 'core' [in the 1984

---

arouse the suspicion that something is seriously amiss with [the Supreme Court's] jurisprudence in this area").

Act] exceeds the boundaries of Article III.") with <u>Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP</u>, 462 B.R. 457, 467 (S.D.N.Y. 2011) ("[A]fter <u>Stern</u>, one can still apply the <u>Orion</u> factors but not looking at whether the matter can be classified as 'core' under 28 U.S.C. § 157, but rather at whether, under <u>Stern</u>, the Bankruptcy Court has the final power to adjudicate it.") (emphasis supplied). The Court need not weigh in on the debate because, as discussed further below, the result is the same regardless of whether primacy is given to the core versus non-core distinction or the evaluation of the Bankruptcy Court's final adjudicative authority.

**IV. Discussion**

The Fleet Defendants assert that the Court should exercise its discretion to withdraw the reference because (1) they are entitled to and have demanded a jury trial on any legal claims asserted by Plaintiffs in the adversary proceeding; (2) none of them has filed a proof of claim; (3) they have not consented to the Bankruptcy Court's final adjudication of any claims; and (4) judicial economy and effective case management weigh in favor of granting the motion to withdraw now, rather than later.

**A.   Core vs. Non-Core and Final Adjudicative Authority**

The Fleet Defendants have not addressed the effect of <u>Stern</u> on the core/non-core factor <u>Orion</u> analysis or the issue of whether the Bankruptcy Court has final adjudicative authority over any of the

claims. Even assuming arguendo that, pursuant to Stern, the Bankruptcy Court lacks final adjudicative authority over most of the claims asserted in the Adversary Proceeding, the Court finds that this factor "is not determinative in deciding whether to withdraw the reference[.]" Lyondell, 467 B.R. at 723. The Second Circuit also requires an investigation into whether the claims are legal or equitable in nature, as well as considerations of "efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." Orion, 4 F.3d at 1101. See, e.g., Adelphia Recovery Trust v. FLP Group, Inc., No. 11 Civ. 6847(PAC), 2012 WL 264180, at *3 (S.D.N.Y. Jan. 30, 2012) (after Stern, "a court's consideration of a motion to withdraw the reference to bankruptcy court should—*in addition to the Orion factors*—include consideration of" the bankruptcy court's final adjudicative authority) (emphasis supplied).

**B.   Nature of Trustee's Claims: Legal or Equitable**

The Bankruptcy Court, as a non-Article III court, lacks the power to conduct a jury trial on an Article III right without the consent of the parties. See 28 U.S.C. 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties."); see generally Stern, 131 S. Ct. at 2614-15. The Fleet

Defendants have not consented to a jury trial in the Bankruptcy Court, and they are entitled to a jury trial before an Article III judge on their legal claims if the proceedings progress to that stage. However, the caselaw in this Circuit is clear that "a district court is not compelled to withdraw a reference simply because a party is entitled to a jury trial." In re Enron Power Marketing, Inc., No. 01 Civ. 7964, 2003 WL 68036, at *6 (S.D.N.Y. Jan. 8, 2003). Furthermore, in similar cases, courts in this Circuit have held that "withdrawing the reference is premature where discovery has not commenced and plaintiffs have not yet survived a motion to dismiss." In re Extended Stay, Inc., 466 B.R. at 206. Indeed, the legal claims in the Adversary Proceeding eventually may resolve without the necessity of a jury trial. However, if they do not, the Fleet Defendants may move to withdraw the reference at a later date. E.g., In re Arbco Cap. Mgmt., LLP, 479 B.R. 254, 267 (S.D.N.Y. 2012).

### B.   Considerations of Efficiency

Contrary to the Fleet Defendants' contentions, withdrawal would not promote judicial economy and effective case management. First, virtually all of the causes of action asserted by Plaintiffs are considered core bankruptcy proceedings. Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, and XVI all assert claims for avoidance and recovery of various transfers and transactions pursuant to Sections 502(d), 544, 550, and 551 of the Bankruptcy

Code, and thus they qualify as core proceedings. See In re S.W. Bach & Co., 425 B.R. 78, 89 (Bankr. S.D.N.Y. 2010) ("'Core proceedings are matters arising under the Bankruptcy Code or arising in bankruptcy cases.'") (quotation and citations omitted). The fact that these causes of action also invoke State law does not preclude a finding that they are "core." See In re CIS Corp., 172 B.R. 748, 756 (Bankr. S.D.N.Y. 1994) (citing, inter alia, In re Manville Forest Products Corp., 896 F.2d 1384, 1389 (2d Cir. 1990) ("The relevant analysis is whether the nature of [the] adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power.")). Count XV, which asserts a cause of action for equitable subordination against the Debtor's estate under Section 510 of the Bankruptcy Code, is a core claim. See In re Poughkeepsie Hotel Assocs. Joint Venture, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991) ("The notion of equitable subordination, as embodied in Code § 510(c), is peculiar to bankruptcy law and an issue which can only be decided in a bankruptcy setting"). Count XVII seeks an accounting of the Fleet Defendants' transactions with the Debtor, which also is a core claim. See Adelphia Communications Corp. v. Rigas, No. 02 Civ.8495 GBD, 02-41729 REG, 2003 WL 21297258, at *2 (S.D.N.Y. June 4, 2003) ("The claims for fraudulent conveyance, a constructive trust, and the demand for an accounting directly impact the bankruptcy estate and are core claims.") (citation omitted). Generally speaking,

"'core matters are ones with which the bankruptcy court has greater familiarity and expertise,'" In re Enron Corp., 317 B.R. 232, 234 (S.D.N.Y. 2004) (quoting In re Chateaugay Corp., 193 B.R. 669, 675 (S.D.N.Y. 1996)). Thus, even if withdrawal of the reference ultimately becomes necessary, allowing the case to remain in the Bankruptcy Court for the time being will provide this Court with the benefit of the Bankruptcy Court's subject-matter expertise. See, e.g., Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC, 490 B.R. 46, 58 (S.D.N.Y. 2013) ("Multiple courts in this District have already concluded that, although Stern prevents the Bankruptcy Court from entering final judgment on avoidance claims, considerations of efficiency and uniformity counsel in favor of permitting the Bankruptcy Court to issue proposed findings of fact and conclusions of law.") (citations omitted).[3]

Only Counts XII, XIII, and XIV, which assert causes of action for breach of fiduciary duty, unjust enrichment, and piercing the corporate veil, respectively, appear to be non-core claims. However, these claims might have a conceivable effect on the bankruptcy estate, and arguably could fall under the "related to" jurisdiction of the Bankruptcy Court. See McCord, 316 B.R. at 121

---

[3] See In re Madison Bentley Assocs., LLC, 474 B.R. 430 (S.D.N.Y. 2012) ("The authority of a bankruptcy court to issue recommendations on findings of facts and conclusions of law survives Stern.") (citation omitted); see also Executive Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2171-72, 2173 (2014).

(citing, inter alia, In re Corson Mfg. Co., Nos. 01-MC-5E, 99-16855K, AP 00-1366K, 2001 WL 877394, at *2 (W.D.N.Y. June 27, 2001) (ruling that breach of fiduciary duty claims were related to core fraudulent transfer claims and refusing to withdraw reference as to those claims)). Where, as here, non-core claims are closely related to the core claims, "merely severing the non-core claims from the core claims would likely result "in duplicative presentations on substantially overlapping factual matters" and "cause unnecessary delay and deplete both judicial resources and the assets of the bankruptcy estate." In re Corson Mfg. Co., 2001 WL 877394, at *2 (quotation omitted).

Moreover, as Plaintiffs point out, the Bankruptcy Court has presided over Debtor's Chapter 11 case for more than two years, has considered and adjudicated the Trustee Motion and the Motion to Prosecute, has held an evidentiary hearing on the Trustee Motion, and is now presiding over a second adversary proceeding involving Debtor. The "hypothetical possibility of duplicative proceedings" cited by the Fleet Defendants does not outweigh the efficiencies gained by receiving the recommendation of a court that has acquired familiarity with the underlying facts and possesses substantial expertise in the bankruptcy law applicable to Plaintiffs' claims. See Securities Investor Protection Corp., 57 B.R. at 58. Finally, the Bankruptcy Court is as well-equipped as a Magistrate Judge to

manage discovery in this matter, given that it handles similar cases regularly. See Arbco, 479 B.R. at 268.

### C. Prevention of Forum Shopping

The Fleet Defendants assert that they are not engaged in forum shopping and seek withdrawal only to promote uniformity and efficiency. Plaintiffs assert that if efficiency and uniformity were the Fleet Defendants' sole concern, they could have consented to the entry of a final order by the Bankruptcy Court. See In re Lehman Bros. Holdings Inc., 480 B.R. 179, 197 (S.D.N.Y. 2012) (commenting that if judicial economy was "[Chase's] sole concern, [Chase] could have simply consented to" entry of final orders by the bankruptcy court) (citations omitted). Regardless of the Fleet Defendants' motivations, withdrawal at this stage would result in significant inefficiencies, as discussed above, and is not appropriate.

### D.  Uniformity in the Administration of Bankruptcy Law

The Fleet Defendants argue that having two cases against the Fleet Defendants (the Adversary Proceeding and the SEC's action) pending in different courts gives rise to the likelihood of conflicting rulings on legal matters, such as the applicability of the attorney-client privilege. The SEC's action is pending only against Fleet, however. And, as Plaintiffs point out, the relevant consideration under Orion is whether withdrawal of the reference would promote "uniformity in the administration of *bankruptcy* law,"

4 F.3d at 1101 (emphasis supplied). The Second Circuit has indicated that the determination of uniformity under Orion "will turn" upon the core versus non-core distinction. Id. The SEC has asserted claims against Fleet for violations of Section 10(b) of the Securities Exchange Act and Sections 17(a)(1), 17(a)(2), 17(a)(3), 5(a), and 5(c) of the Securities Act. Thus, while the SEC's action does not involve questions of bankruptcy law, the Adversary Proceeding involves almost all core bankruptcy matters. This factor therefore does not weigh in favor of withdrawal.

## V. Conclusion

For the reasons discussed above, the Fleet Defendants' Motion to Withdraw the Reference (Dkt #1) is denied without prejudice to renew at a later date. The Adversary Proceeding will remain subject to the jurisdiction of the Bankruptcy Court at this time.

**IT IS SO ORDERED.**

                              S/Michael A. Telesca
                          _____
                               HON. MICHAEL A. TELESCA
                              United States District Judge

Dated:    December 2, 2015
            Rochester, New York